IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY KOGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 cv 07150 |
| | ) | |
| | ) | Judge Matthew F. Kennelly |
| THOMAS J. DART, SHERIFF OF COOK | ) | |
| COUNTY; and COOK COUNTY, ILLINOIS | ) | Magistrate Judge Keys |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPORT OF MOTION FOR INJUNCTIVE RELIEF**

Plaintiff Gregory Koger, by and through his undersigned attorneys, submits this Memorandum in Support of his Motion for a Preliminary Injunction.

**I. INTRODUCTION**

Defendant Dart maintains and enforces a constitutionally defective policy at the Cook County Department of Corrections ("DOC") by banning inmates from receiving and obtaining newspapers at the Cook County jail. The policy violate inmates' First Amendment rights because it is overly broad and fails to serve any legitimate penological interests.

**II. FACTS**

Plaintiff is currently serving a 300-day sentence for misdemeanor criminal trespass, simple battery and resisting arrest at the Cook County jail (People v. Koger,

Case No. 09-200 4948 01, Circuit Court of Cook County, Criminal Division). Plaintiff' is scheduled to be released from jail on or around October 24, 2013.

On August 7, 2013, Plaintiff's friend Barbara Lyons sent to Plaintiff at the jail a copy of a <u>Chicago Tribune,</u> dated August 5, 2013. This mail was censored by the jail and sent back to Barbara Lyons on August 13, 2013, with the word "Return!" written in black magic marker on the face of the envelope. Inside the returned envelope, there were two items: the returned copy of the <u>Chicago Tribune</u> and a form entitled "Cook County Department of Corrections/Notice of Return Mail," which lists 40-plus items prohibited from being sent inmates at the jail including an item that reads "No Newspapers." (See Plaintiff's Exhibit A, attached hereto.) On the enclosed form, the item "No Newpapers" was circled and checked with an "X," thereby indicating that this was the basis for the jail's decision to return the <u>Tribune</u> to Plaintiff's friend Barbara Lyons.

The DOC's stated policy is to ban inmates from receiving and obtaining newspapers at the Cook County jail. The DOC's own website sets forth "the Cook County DOC Inmate Mail Policy," which provides a list of over 40 items that cannot be sent to an inmate and includes "newspapers." (See, <u>http://www.cookcountysheriff.org/ doc/docinmatemail .html</u>, last viewed October 8, 2013). In addition, Cook County DOC General Order 9.7.1 lists "newspapers" as a form of "institutional contraband." Significantly, although DOC Policy prohibits inmates from receiving all newspapers, it allows them to receive books and periodicals. (See, <u>http://www.cookcountysheriff.org/ doc/docinmatemail .html</u>, ("Paperback books, magazines, are limited to 3 per mailing").

### III. ARGUMENT

Under the law, this Court should grant a preliminary injunction where the moving party makes a showing that (1) Plaintiff is likely to succeed on the merits of the case; (2) Plaintiff has no adequate remedy at law and is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities/harms is in Plaintiff's favor; and (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc. 129 S. Ct. 365, 374 (2008). As shown below, Plaintiff can establish all four of these required elements.

### A. Plaintiff is Likely to Succeed on the Merits.

The Cook County DOC's total ban on newspapers is a clear violation of Plaintiff's First Amendment rights because it is overbroad and serves no apparent legitimate penological interest.

#### 1. The First Amendment Protects Inmates' Right to Obtain and Receive Newspapers.

The First Amendment encompasses not only the right of "free speech" but also the right to receive information and ideas. Stanley v. Georgia, 394 U.S. 557 (1969). It is well-established that prisoners have a First Amendment right to receive information through the mail. Jackson v Pollard, 208 Fed. Appx. 457, 460 (7th Cir. 2006). As the Seventh Circuit has stated, "Freedom of speech is not merely freedom to speak; it is also freedom to read. Forbid a person to read and you shut him out of the marketplace of ideas and opinions that it is the purpose of the free-speech clause to protect." King v. Fed. Bureau of Prisons, 415 F.3d 634, 638 (7th Cir. 2005). Newspapers are core-

protected speech under the First Amendment. Connick v Myers, 461 U.S. 138, 145 (1983).

### 2. First Amendment Law Requires that A Jail's Ban Serve Legitimate Penological Interests, Which this Ban Fails to Serve.

A prison rule or policy that infringes a prisoner's constitutional rights is valid only "if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Such legitimate interests include "security, order, and rehabilitation." Procunier v. Martinez, 416 U.S. 396, 413 (1987). Furthermore, "A regulation cannot be sustained where the logical connection to a legitimate interest is 'so remote as to render the policy arbitrary or irrational.'" West v. Endicott, 2008 U.S. Dist. LEXIS 26072, at 30 (quoting Turner, 482 U.S. at 89-90.

Admittedly, courts have upheld the right of prison officials to restrict certain reading materials, but when courts do, the restriction are the result of specific and identifiable threats to institutional security and discipline. See Thornburgh v. Abbott, 490 U.S. 401, 409-410 (1989) (Court denied inmate's challenge to regulations promulgated by the Federal Bureau of Prisons which authorize prison officials to reject incoming publications found to be detrimental to institutional security); see also West v. Endicott, 2008 U.S. Dist. LEXIS 26074, at 33 (court, in denying inmate's challenge to ban of receiving Moaist newsletters, upheld the constitutionality of narrowly drawn prison regulations that "teach or advocate violence or hatred and present a danger to institutional security and order" or "teach or advocate behavior that violates the law of the state or the United States").

Cook County's Jail's total ban on inmate's receiving and obtaining all newspapers is easily distinguishable, since all newspapers, including mainstream newspapers like the Chicago Tribune, simply do not "teach or advocate violence" or in any way create a security threat which would support their prohibition.

### 3. The Jail's Wholesale Ban On Inmates' Receiving and Obtaining Newspapers Is Not Tailored To Serve Legitimate Penological Interests and thus Overbroad.

In general, courts have found that broad bans, as here, involving whole categories of information, without valid justification, are invalid. For example, a wholesale prohibition against hard-bound books was found unconstitutional, because the prison could have removed the hard-bound book covers to preclude any security issues. Jackson v. Elrod, 881 F. 2d 441, 446 (7th Cir., 1989) (citing to Bell v. Wolfish, 441 U.S. 547 (1979)).

To be sure, jail wardens do have broad discretion in censoring prison mail and publications for security and other legitimate purposes, but the Supreme Court has pointed out that publications should preferably be screened on an "individualized" basis, by the jail warden to determine whether specific valid criteria, such as prison security, have been met. Thornburgh v. Abbott, 490 U.S. 401, 416 (1989) (Supreme Court endorses prison regulations on publications because "no publication may be excluded unless the warden himself makes the determination that it is 'detrimental to the security, good order, or discipline of the institution or...might facilitate criminal activity.'" (internal citations omitted))

Here, Cook County jail's wholesale ban on inmates' receiving and obtaining newspapers is the opposite of an individualized determination.

5

Significantly, the jail's policy of allowing prisoners' access to books and periodicals (See, http://www.cookcountysheriff.org/doc/docinmatemail.html, ("Paperback books, magazines, are limited to 3 per mailing") but not newspapers seriously undermines any reasonable justification the Defendant Sheriff may have for the selective ban on newspapers. The Supreme Court has repeatedly emphasized that "[e]xemptions from an otherwise legitimate regulation of a medium of speech may...diminish the credibility of the government's rationale for restricting speech in the first place." Ladue v. Gilleo, 512 U.S. 43, 52 (1994).

That is to say, the Supreme Court has repeatedly recognized that an "under inclusive" regulatory scheme is not narrowly tailored. See, Rubin v. Coors Brewing Co., 514 U.S. 476, 489 (1995) (concluding that "exemptions and inconsistencies bring into question the purpose of the [restriction]"); see also, City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 425 (1993) (determining that an ordinance was unconstitutional when, among other reasons, "the city has asserted an interest in esthetics, but respondent publishers' newsracks are no greater an eyesore than the newsracks permitted to remain on [the city's] sidewalks").

In concert with the Supreme Court's suspicions against under-inclusive regulatory schemes, the Seventh Circuit has held that a total ban on newspapers was "arbitrary and unjustifiable" when other reading materials where permitted and arguably could have caused "fire damage and jammed plumbing," which was the jail's justification for the ban. Kincaid v. Rusk, 670 F. 2d 737, Par. 744 (7th Cir. 1982) (internal citations omitted).

6

Here, it is hard to imagine how a mainstream general interest newspaper, like the Chicago Tribune, could pose a greater security risk or disciplinary concern than books and/or magazines, which are allowed to inmates. Accordingly, Cook County jail's policy of cutting inmates off from the receipt of newspapers but not books/magazine would seem to embody the very type of under-inclusive regulatory scheme that both the Supreme Court and the Seventh Circuit have found constitutionally suspect.

    **4. The Jail's Ban Applies Across the Board to the Entire Prison Population and Is thus Overbroad.**

The DOC's ban is unreasonable because it applies across the board to all inmates, regardless of any behavior problems or actual threats to security. A ban on newspapers could be appropriate if it was focused on a "group of specially dangerous and recalcitrant inmates," and its purpose was to motivate better prisoner behavior. Beard v. Banks, 548 U.S. 521 at 524 and 529 (2006). The policy at issue in Beard applied only to the "worst of the worst" inmates, which comprised about "0.01 percent of the total prison population," literally about forty inmates in total. Beard at 530. In contrast, Cook County's Newspaper Ban applies to all prisoners, literally thousands of individuals, and is not focused on improving behavior of the worst offenders. Plaintiff and other inmates who who have had no disciplinary probels should not be subject to such a ban.

  **B. Plaintiff is Likely to Suffer Irreparable Harm.**

The Cook County DOC newspaper ban is an infringement on Plaintiff's well-established First Amendment rights and the loss of such rights "even for minimal periods of time" constitutes irreparable harm. Elrod v. Burns, 427 U.S. 347, 373 (1976).

Furthermore, there is no adequate remedy at law because an award of money damages is not sufficient to compensate for the loss of First Amendment rights. MacDonald v. Chicago Park Dist. 132 F. 3d 355 (7th Cir. 1997). Every day that Plaintiff and other inmates are denied access to information provided by newspapers, such as the Chicago Tribune, they suffer the irreparable harm of being kept ignorant of local and world news.

### C. The Balance of Equities/Harms is in Plaintiff's Favor.

The balance of harms is in Plaintiff's favor because great irreparable harm will be caused to Plaintiff if this court fails to end the Cook County DOC newspaper ban, compared to little, if any, harm that would be caused to the Defendants. In fact, Defendants will suffer no harm if the Court ends the newspaper ban, because the general ban serves no "reasonable penalogical interest." In contrast, the ban, by denying the total population of the Cook County jail (which includes thousands of inmates at any given time) hinders rehabilitation of prisoners and their successful transition to civilian life.

### D. An Injunction is in the Public Interest.

The public interest clearly weighs in favor of allowing inmates access to newspapers at the Cook County jail and to the "free flow of constitutionally protected speech." ACLU v. Reno, 929 F Supp. 824, 851 (E.D. Pa. 1996). The Seventh Circuit has held that "[I]t is always in the public interest to protect First Amendment liberties." Joelner v. Village of Washington Park, 378 F. 3d 613, 620 (7th Cir. 2004, quoting Connection Distrib. Co. v. Reno, 154 F. 3d 281, 288 (6th Cir. 1998). Therefore, the public interest would be protected not harmed by a preliminary injunction.

8

## IV. CONCLUSION

Plaintiff respectfully requests the Court issue a preliminary Injunction against Defendants, prohibiting them from continuing to enforce the Newspaper Ban at the Cook County jail during the pendency of this case.

Dated: October 11, 2013

                                                    Respectfully submitted,

                                                    /s/ Mark Weinberg
                                                    Attorney for Plaintiff

                                                    /s/ Zisl Taub Edelson
                                                    Attorney for Plaintiff

Mark Weinberg
3612 N. Tripp Ave.
Chicago, IL 60641
(773) 283-3913

Zisl Taub Edelson
6257 N. Lincoln Ave., #144
Chicago, IL 60659
(773) 587-9693